703 F.2d 732
 10 Ed. Law Rep. 66
 CHEYNEY STATE COLLEGE FACULTY and E. Sonny Harris and Arthur
M. Bagley and Ernest Berry Plaintiffs I, individually and on
behalf of others similarly situated and Will Tate and Diana
Tracey and Eugene Jones and Stacey Shields and Sylvia White
and Vernon Montague, Plaintiffs V, individually and on
behalf of others similarly situated and Lisa Fordham, and
Dennis Rucker, Plaintiff VI, individually and on behalf of
others similarly situated and Christopher Hammon and Nathan
L. Gadson, Plaintiffs VII, individually and on behalf of
others similarly situated and Jacqueline Sheppard,
Plaintiffs II, individually and on behalf of others
similarly situated and Henry C. Dailey and Dorian G. Jackson
and Leatrice J. Bennet and William Rosenthal, Plaintiffs
III, individually and on behalf of others similarly situated
and Jeffrey K. Hart, individually and as President of the
Student Government Cooperative Association, Inc. on behalf
of others similarly situated, Plaintiff IV and Charles
Gamble, Elisha B. Morris and Carla Robertson, Plaintiffs
VIII, individually and on behalf of others similarly
situated and Edward Smith, Plaintiff IX, individually and on
behalf of others similarly situated and Denise Scruggs,
Plaintiff X, individually and on behalf of others similarly
situated, Appellants,
v.
Shirley HUFSTEDLER, Secretary, U.S. Department of Education,
Dewey Dodds, Director, Office of Civil Rights, U.S.
Department of Education, Defendant I, Robert G. Scanlon,
Secretary, Pennsylvania Department of Educ., Clayton L.
Sommers, Commissioner of Higher Education, Defendant II,
Board of State Colleges and University Directors,
Commonwealth of Pennsylvania, Defendant III, Board of
Trustees of Cheyney State College, Defendant IV, Wade
Wilson, President, Cheyney State College, Defendant V, Appellees.
 No. 82-1282.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 13, 1983.
Decided March 30, 1983.
 
 LeRoy S. Zimmerman, Atty. Gen., Louis J. Rovelli, (argued), Deputy Atty. Gen., Harrisburg, Pa., for appellees.
 Roland J. Atkins (argued), O'Brien & O'Brien, Philadelphia, Pa., for appellants.
 Before WEIS, SLOVITER and BECKER, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The record in this case leads us to conclude that a stay order issued by the district court did not effectively terminate the litigation and hence is not appealable. Treating the matter as a petition for mandamus, we hold that the district court did not clearly abuse its discretion in delaying the suit pending the potential resolution of some important issues in ongoing administrative proceedings. Although the court relied on the doctrines of primary jurisdiction and exhaustion of administrative remedies, which we find inapplicable here, the stay was nevertheless a reasonable exercise of the court's power to control its docket. Accordingly, we dismiss the appeal.
 
 
 2
 This suit was brought as a class action in 1980 by faculty, alumni, students, and prospective students of Cheyney State College, alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000d et seq., as well as 42 U.S.C. Secs. 1981 and 1983. Plaintiffs originally named the Secretary of the United States Department of Education and the Regional Director of its Office for Civil Rights as defendants, but agreed to dismiss them when they renewed enforcement efforts against the other parties. The district judge then concluded that the administrative proceedings in the U.S. Department of Education might obviate at least part of the controversy and stayed further judicial proceedings.
 
 
 3
 Plaintiffs contend that Pennsylvania operates a de jure segregated system of higher education. As a result, they allege, the faculty and student body of Cheyney are largely black; its library, facilities, course offerings, and budget are not on a par with other state-owned schools; and its teaching staff was singled out for layoffs.
 
 
 4
 The amended complaint requests declaratory and injunctive orders against officials of the U.S. Department of Education and the Pennsylvania Department of Education, the Pennsylvania Board of State Colleges and University Directors, the Board of Trustees of Cheyney State College, and the school president. Plaintiffs sought relief that declares the Commonwealth System of Higher Education functions on a dual and segregated basis by race; directs the U.S. Department of Education to undertake enforcement proceedings pursuant to Title VI; requires the Pennsylvania Department of Education to develop and implement a constitutional plan assuring equal opportunity in higher education; enjoins the Department from violating federal desegregation guidelines; and prohibits Cheyney from terminating the employment of faculty members.
 
 
 5
 In 1969, eleven years before this suit was filed, the U.S. Department of Health, Education and Welfare determined that Pennsylvania was one of ten states operating a racially segregated system of higher education in violation of Title VI.[1] Pennsylvania soon submitted a plan for desegregating its schools, but the agency found it unacceptable.
 
 
 6
 In 1973, the United States District Court for the District of Columbia ordered HEW to commence enforcement proceedings against the states that were not in compliance with Title VI. Adams v. Richardson, 356 F.Supp. 92, 94 (D.D.C.), aff'd as modified, 480 F.2d 1159, 1165 (D.C.Cir.1973) (ordering HEW to direct the states to submit desegregation plans, and granting an additional period of time before the agency must initiate compliance proceedings against those states whose plans are unacceptable). The agency accepted a revised plan submitted by Pennsylvania in 1974, and the state then intervened in the Adams litigation to defend the adequacy of its proposal. In 1977, the court directed HEW to notify six states that their plans were inadequate. The court made no findings with respect to Pennsylvania and exempted it from the order, pending settlement negotiations then in progress. Adams v. Califano, 430 F.Supp. 118, 120 (D.D.C.1977).
 
 
 7
 In 1981, after the suit at hand was filed, the U.S. Department of Education, successor to HEW, notified Pennsylvania that the 1974 plan was inadequate. The state was ordered to submit a new proposal. Plaintiffs then dismissed the federal defendants from this suit because the relief sought from them had been obtained, and petitioned to intervene in the Adams litigation.
 
 
 8
 The remaining defendants urged the district court to either dismiss the complaint or abstain. The court concluded that plaintiffs were required to exhaust administrative remedies under Title VI, and that the U.S. Department of Education had primary jurisdiction. The court stayed the suit until further order and directed defendants to report within 90 days on the progress of the administrative proceedings.
 
 
 9
 Plaintiffs appeal from the stay order, asserting jurisdiction under 28 U.S.C. Sec. 1291.[2]
 
 I. APPEALABILITY
 
 10
 Courts of appeal normally review only "final decisions" of the district courts, 28 U.S.C. Sec. 1291, and "a stay is not ordinarily a final decision for purposes of Sec. 1291." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. ----, ---- n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983). When a stay amounts to a dismissal of the underlying suit, however, an appellate court may review it. Id. at ----, 103 S.Ct. at 934. See also, Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative, 583 F.2d 104, 109 (3d Cir.1978) (abstention in deference to state administrative scheme is "for all intents and purposes a final disposition of the case within the meaning of 28 U.S.C. Sec. 1291"); In re Grand Jury Proceedings (U.S. Steel-Clairton Works), 525 F.2d 151, 155-56 (3d Cir.1975) (indefinite stay causing the proceedings to "grind to a halt" has the practical effect of a dismissal and is final for purposes of Sec. 1291). Cf. Haberern v. Lehigh & New England Ry., 554 F.2d 581, 584 (3d Cir.1977) (stay order of "indefinite length" that frustrates a congressional policy to permit certain actions to proceed without delay appealable as a collateral order).
 
 
 11
 An indefinite stay order that unreasonably delays a plaintiff's right to have his case heard is appealable. Here, the district court stayed the suit until further order. But as we pointed out in Brace v. O'Neill, 567 F.2d 237, 242 (3d Cir.1977), "determination of the finality--and therefore the appealability--of the [district court order] first requires that we determine the substance of what was intended." This approach contrasts with the usual situation in which we first ascertain that jurisdiction exists and only then proceed to the merits.
 
 
 12
 The stay in this case does not have the practical effect of a dismissal. Nothing in the district court's opinion or order intimates that the stay was intended to "deep six" the suit. Plaintiffs have not been put "effectively out of court." Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 1296 n. 2, 8 L.Ed.2d 794 (1962). Nor is the case "rife with special circumstances which bring it outside the general rule and so limit its precedential value as to not measurably weaken our continued aversion to piecemeal appeals." Haberern v. Lehigh & New England Ry., 554 F.2d at 584.
 
 
 13
 The specific references made by the trial court to the administrative action pending in the U.S. Department of Education and the Adams litigation still underway in the District of Columbia convince us that this stay is merely a temporary suspension of proceedings.[3] Moreover, the stay order by its terms requires defendants to report within 90 days on the progress of the proceedings in the U.S. Department of Education. The district court's determination to reconsider its order on that date shows that the stay is simply a tentative step toward final disposition of the merits. See Rodgers v. U.S. Steel Corp., 508 F.2d 152, 159 (3d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). We also construe the court's order as stating an intention to monitor the stay periodically.
 
 
 14
 We conclude that the stay order is not final under 28 U.S.C. Sec. 1291, and therefore is not appealable.[4]
 
 II. MANDAMUS
 
 15
 The courts of appeals may issue writs of mandamus in aid of their jurisdiction under the All Writs Act, 28 U.S.C. Sec. 1651. On infrequent occasions when no other remedy was available, a petition for this extraordinary writ has been granted to review a stay order issued in a clear abuse of discretion. See, e.g., Texaco, Inc. v. Borda, 383 F.2d 607, 608 (3d Cir.1967). A court may also treat an attempted appeal of a stay order as a petition for mandamus. Hackett v. General Host Corp., 455 F.2d 618, 626 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). See 9 Moore's Federal Practice p 110.28 at 316. We choose to do so here.
 
 
 16
 In granting the stay in this case, the district court relied on the closely allied, yet distinct, doctrines of primary jurisdiction and exhaustion of administrative remedies. Both doctrines are concerned with promoting proper relationships between courts and administrative agencies, but each comes into play under different circumstances. U.S. v. Western Pacific R.R., 352 U.S. 59, 63-64, 77 S.Ct. 161, 164-165, 1 L.Ed.2d 126 (1956).
 
 
 17
 Primary jurisdiction applies when decision-making is divided between courts and administrative agencies. It calls for "judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." U.S. v. Philadelphia Nat'l Bank, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963). See also, 3 K. Davis, Administrative Law Treatise Sec. 19.01 at 2 (1958) ("The doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision.").
 
 
 18
 Cases involving closely regulated enterprises such as utilities and railroads provided the first vehicles for application of primary jurisdiction. Some opinions, such as U.S. v. Western Pacific R.R., supra, based the doctrine in part on deference to purported administrative expertise. See L. Jaffee, "Primary Jurisdiction," 77 Harv.L.Rev. 1037, 1043-47 (1964). It is now generally accepted, however, that the principal justification is the need for an orderly and sensible coordination of the work of agencies and courts. 3 K. Davis, Administrative Law Treatise Sec. 19.01 at 5.
 
 
 19
 In contrast, exhaustion of administrative remedies governs the timing of an appeal to a court from agency action. Id. at 2. Since a court will not intervene until the administrative process has run its course, U.S. v. Western Pacific R.R., 352 U.S. at 63, 77 S.Ct. at 164, exhaustion is a defense to premature judicial review of administrative action deemed incomplete. See Jaffe, 77 Harv.L.Rev. at 1037.
 
 
 20
 The original application of primary jurisdiction to essentially regulatory matters has been expanded by legislative developments. A species of the doctrine may be found in certain civil rights statutes requiring that complainants first resort to the conciliation efforts of an administrative agency before turning to the courts for relief. See, e.g., Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5; Age Discrimination in Employment Act of 1967, 29 U.S.C. Sec. 626. Since an individual must first apply for administrative relief, it follows that primary jurisdiction lies with the agency.[5]
 
 
 21
 Plaintiffs in this case base their claims for declaratory and injunctive relief on Title VI of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000d et seq., as well as 42 U.S.C. Secs. 1981 and 1983. Administrative exhaustion and primary jurisdiction do not apply as such to these controversies, and therefore cannot support the stay entered here.
 
 
 22
 N.A.A.C.P. v. Medical Center, Inc., 599 F.2d 1247, 1250 n. 10 (3d Cir.1979), held that Title VI creates a private right of action for plaintiffs who seek relief other than funding termination, and that preliminary recourse to agency remedial procedures is not required. In Chowdhury v. Reading Hospital & Medical Center, 677 F.2d 317, 322 n. 13 (3d Cir.1982), petition for cert. filed, 51 U.S.L.W. 3120 (U.S. Aug. 24, 1982) (No. 82-201), we observed that administrative exhaustion is not a prerequisite to a private suit under Title VI because "the termination of federal funding, which is the only real administrative weapon under Title VI, is completely inadequate for providing relief to individual complainants."
 
 
 23
 As the Supreme Court explained in Rosado v. Wyman, 397 U.S. 397, 406, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970), "neither the principle of 'exhaustion of administrative remedies' nor the doctrine of 'primary jurisdiction' has any application" to a situation where the agency lacks procedures for complainants to "trigger and participate in" the administrative process. See also Cannon v. University of Chicago, 441 U.S. 677, 707 n. 41, 99 S.Ct. 1946, 1962 n. 41, 60 L.Ed.2d 560 (1979). Under Title VI, "private parties are normally precluded from advancing their ... rights before the administrative agency," N.A.A.C.P. v. Medical Center, Inc., 599 F.2d at 1254, and there is "no provision for a remedy for the victim of the discrimination, such as injunctive relief." Chowdhury v. Reading Hospital & Medical Center, 677 F.2d at 320. Because of the nature of the individual's role in the Title VI enforcement scheme, we cannot say that primary jurisdiction over this dispute lies with the Department of Education. Cf. Lloyd v. Regional Transportation Authority, 548 F.2d 1277, 1287 (8th Cir.1977) (administrative exhaustion and primary jurisdiction do not apply to a private suit under Sec. 504 of the Rehabilitation Act, whose enforcement scheme was patterned after Title VI).
 
 
 24
 Thus neither administrative exhaustion nor primary jurisdiction supports the stay of the Title VI phase of this case. Similar considerations apply to the counts brought under 42 U.S.C. Secs. 1981 and 1983. Since no federal agency has even been authorized to review such claims, an attempt to obtain administrative relief cannot be a prerequisite to action in the district court. See Patsy v. Florida Board of Regents, --- U.S. ----, ---- n. 4, 102 S.Ct. 2557, 2561 n. 4, 73 L.Ed.2d 172 (U.S. June 22, 1982). Cf. Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3d Cir.1971) (resort to conciliation efforts by Equal Employment Opportunity Commission not a jurisdictional prerequisite to a Sec. 1981 suit charging employment discrimination).
 
 
 25
 Although the doctrines of primary jurisdiction and administrative exhaustion do not apply here, it does not follow that the district court erred in ordering the stay. In Landis v. North American Company, 299 U.S. 248, 254-255, 57 S.Ct. 163, 165-166, 81 L.Ed. 153 (1936), the Supreme Court said "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." The Court emphasized the need to adapt judicial processes to varying conditions, and said that in cases of exceptional public interest, individual litigants might be required to "submit to delay not immoderate in extent and not oppressive in its consequences." Id. at 256, 57 S.Ct. at 166.
 
 
 26
 We recognize that plaintiffs are dissatisfied with the progress of Pennsylvania's efforts to desegregate its system of higher education and with the progress of this litigation to date. But we are also cognizant that the issues raised by desegregation of higher education, where attendance is voluntary, differ from those in the primary and secondary fields where attendance is compulsory. Moreover, the proper allocation of a state's resources is never an easy matter, even in the best of times.
 
 
 27
 The issues raised by the plaintiffs' suit are complex and not easily resolved. It is possible that an appropriate solution for at least some of the difficult problems may be obtained more readily through the flexibility of the administrative process now in active progress. Under these circumstances, we cannot say that the district court abused its discretion by imposing a moderate and actively monitored stay.
 
 
 28
 We emphasize that Landis approved stays of moderate length, and not those of indefinite duration which require a party to take affirmative steps for dissolution. 299 U.S. at 257, 57 S.Ct. at 167. As we divine the district court's intention, defendants must report at 90-day intervals on the progress of the administrative proceedings. That provision for oversight will enable the court to gauge whether the stay has produced fruitful results or mere delay. If it is the latter, we are confident that the court will terminate the stay and proceed forthwith.
 
 
 29
 Finding no clear abuse of the district court's discretion, we deny issuance of a writ of mandamus. The appeal will be dismissed.
 
 
 
 [1]
 Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000d, states:
 No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 Section 602, 42 U.S.C. Sec. 2000d-1, provides the administrative mechanism by which funding agencies must enforce the ban on discrimination in Sec. 601:
 Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity ... is authorized and directed to effectuate the provisions of section 2000d of this title ... by issuing rules, regulations, or orders of general applicability.... Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program ... or (2) by any other means authorized by law: Provided, however, That no such action shall be taken until the department or agency concerned ... has determined that compliance cannot be secured by voluntary means.
 
 
 [2]
 The district court denied plaintiffs' application for a preliminary injunction against faculty layoffs a few days before it stayed the suit, and the notice of appeal filed by plaintiffs cites both actions. In their brief to this court, however, plaintiffs do not raise the injunction as an issue or include it within the statement of relief sought. Instead, plaintiffs describe the layoff issue as "moot." We conclude, therefore, that plaintiffs have abandoned their appeal from the denial of the injunction. Accordingly, jurisdiction does not lie under 28 U.S.C. Sec. 1292(a)(1)
 
 
 [3]
 We note that the Pennsylvania Department of Education submitted a revised enhancement plan for Cheyney State College to the U.S. Department of Education on January 17, 1983--four days after the argument in this appeal. The plan was not satisfactory, and the state has submitted another proposal calling for a substantial increase in funding. The situation thus is fluid, suggesting that progress will be made at the administrative level
 
 
 [4]
 Nor does an appeal lie under 28 U.S.C. Sec. 1292(a)(1), which authorizes review of interlocutory orders of the district courts granting or denying injunctions. Stays pending the outcome of federal administrative proceedings are not ordinarily within the scope of the statute. Day v. Pennsylvania R.R., 243 F.2d 485 (3d Cir.1957). See generally 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 110.20 [4.-3] (1982)
 
 
 [5]
 There is a substantial difference between cases of this type and those in the regulatory field. In the latter area, court enforcement may be inhibited by restricted standards of review even when judicial intervention is sought. See U.S. v. Philadelphia Nat'l Bank, 374 U.S. at 354, 83 S.Ct. at 1736. In the civil rights conciliation cases, however, the suits in federal court are de novo