985 F.2d 406
 Thomas M. BOUSHEL, resident of Canada, Province of Quebec;
Lyna Marie Gelinas-Boushel, resident of Canada, Province of
Quebec; Thomas M. Boushel Holdings, Ltd.; Turfquip, Inc.,
a Canadian corporation, Province of Quebec, Appellants,
v.
TORO COMPANY, a Delaware corporation; Toro Credit Company;
Richard Pollick, resident of the State of
Minnesota; Dennis P. Himan, resident of
the State of Minnesota, Appellees.
 No. 92-1275.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1992.
Decided Feb. 3, 1993.
 
 Robert E. Martell, St. Paul, MN, argued (Chris R. Kabell and Deborah B. Hallbeck, on the brief), for appellants.
 Edward Fox, St. Paul, MN, argued (Jonathan C. Miesen, on the brief), for appellees.
 Before JOHN R. GIBSON and MAGILL, Circuit Judges, and VAN SICKLE,* Senior District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 This appeal arises from a decision by the district court[1] to stay proceedings pending resolution of a concurrent Canadian action concerning the same operative facts. Because we find the district court's order to be a non-final order not subject to appeal, we dismiss this appeal for lack of jurisdiction.
 
 I.
 
 2
 Thomas M. Boushel and his wife, Lyna Marie Gelinas-Boushel, are both Canadian citizens and residents of Quebec. Thomas M. Boushel Holdings, Ltd., and Turfquip, Inc., are Quebec corporations owned and controlled by the Boushels. These appellants collectively will be referred to as the Boushel interests.
 
 
 3
 The Toro Company is a Minnesota corporation in the business of manufacturing and distributing snow removal and lawn care power equipment. Toro distributes its products through an international network of distributors. Toro Credit Company is a wholly-owned subsidiary of the Toro Company which provides financing for Toro distributors. Richard Pollick is the Toro Company's vice president and general manager. Dennis Himan is the company's vice president and treasurer. These appellees collectively will be referred to as Toro.
 
 
 4
 In 1985, Turfquip was organized to distribute Toro products throughout Quebec and the Canadian Maritime Provinces. Toro Credit Company was to provide start-up capital and inventory financing for Turfquip. In connection with this arrangement, the Boushel interests entered into a number of contracts with Toro, including distributorship, financing, and security agreements.
 
 
 5
 In 1989, Toro became concerned about Turfquip's financial condition. Turfquip was incurring substantial losses and becoming heavily indebted to Toro. Although the facts at this point become disputed, it is safe to say that there was mutual mistrust and misunderstanding between the parties concerning the financial dealings of the Boushel interests. Toro believed the Boushel interests were in breach of the contracts detailing the distributorship arrangement.
 
 
 6
 Accordingly, in December 1990, Toro commenced an action in the Quebec Superior Court seeking to enforce the contracts and to obtain payment for various debts. The Boushel interests responded by filing a plea and cross-demand (the equivalent of an answer and counterclaim). This lawsuit will be referred to as the Quebec action and is currently proceeding in the Canadian courts. In connection with the Quebec action, Toro has obtained orders for prejudgment seizures freezing the Boushel interests' bank accounts resulting in the deposit of over $500,000 (Canadian) with the Quebec Superior Court pending disposition of the action.
 
 
 7
 In October 1991, the Boushel interests commenced the present action against Toro and its two officers Himan and Pollick. Toro moved the district court to dismiss or, in the alternative, to stay the present action pending the resolution of the Quebec action which had been proceeding for almost a year and in which there had already been substantial discovery. The district court denied Toro's motion to dismiss, but granted the motion to stay the proceedings. The Boushel interests appeal this decision granting the stay.
 
 II.
 A. The District Court's Order
 
 8
 Because the focus of this appeal is on the district court's order granting the stay, we must first discuss what the order says and what it does not say.
 
 
 9
 The district court found that "[t]he operative facts supporting the claims asserted in this action are exactly the same operative facts supporting the claims asserted by the Boushels in the Quebec action." Boushel v. Toro Co., No. 3-91-0618, slip op. at 3 (D.Minn. Jan. 3, 1992). The district court further found that the Boushel interests made all the same allegations and requested the same relief in both actions. Id.
 
 
 10
 The order then recognized that "[t]he only difference between the two actions is that defendants Himan and Pollick are not directly named as parties in the Quebec action." Id. The district court noted, however, that Himan and Pollick may be liable in the Quebec action under a theory of respondeat superior. Id. The court wrote, "[t]hus, to the extent that the Boushels have any valid claims against Himan and Pollick, they can obtain complete relief from Toro in the Quebec action." Id.
 
 
 11
 At the beginning and at the end of its order, the district court expressly stated that it was granting Toro's motion to stay the United States action pending the resolution of the Quebec action and was denying Toro's motion to dismiss the case. Id. at 1, 5. The court wrote further, "[a] stay merely suspends the proceedings rather than dismisses the action with prejudice."
 
 
 12
 Finally, the court acknowledged that the parties may appear before it again, and the order expressly allows for this eventuality: "If the plaintiffs [the Boushel interests] are unable to obtain complete relief in the Quebec action they are free to continue this action here." Id. at 4.
 
 B. The District Court's Order is Not Final
 
 13
 Toro contends that the district court's order is not a final, appealable order. We agree.
 
 
 14
 Ordinarily, appellate courts may review only final decisions of the district court. 28 U.S.C. § 1291. Typically, grants of stays are not final decisions for purposes of § 1291. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983). Indeed, this court has reiterated that an order staying civil proceedings usually is interlocutory and not final. Lunde v. Helms, 898 F.2d 1343, 1345 (8th Cir.), cert. denied, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 208 (1990).
 
 
 15
 The only time that an order granting a stay will be considered a final order is if it is tantamount to a dismissal and it effectively ends the litigation. Moses Cone, 460 U.S. at 10, 103 S.Ct. at 934. "When a stay amounts to a dismissal of the underlying suit, however, an appellate court may review it." Lunde, 898 F.2d at 1345 (quoting Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 735 (3d Cir.1983)). To determine whether the district court meant to end the litigation, we must examine the substance of what the court intended. Lunde, 898 F.2d at 1345. See Cheyney State, 703 F.2d at 735; Brace v. O'Neill, 567 F.2d 237, 242 (3d Cir.1977). We hold that the substance of the district court's order did not effectively end the Boushel interests' lawsuit.
 
 
 16
 The district court recognized the peculiar nature of this case. The claims in the foreign and federal action overlap to a large degree, but do not overlap completely. The district court took pains to make clear that it was issuing a stay of the federal action, not a dismissal. The order specifically stated that if the Boushel interests were unable to obtain complete relief in the Quebec action, they are free to continue the federal action. Similar language was inserted in the order granting the stay in the Lunde case. Lunde, 898 F.2d at 1345. The Lunde court held that such a stay is not a final appealable order. Id. Similarly, we so hold here.
 
 
 17
 The Boushel interests argue that the present stay is analogous to a stay issued under the doctrine of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under Colorado River, in limited circumstances, a federal court may dismiss a federal action in favor of a concurrent state proceeding. Id. at 809-20, 96 S.Ct. at 1242-48. A stay issued based on Colorado River abstention has been held to be tantamount to a dismissal, and therefore a final order, because the federal courts do not anticipate further litigation. Moses Cone, 460 U.S. at 10, 103 S.Ct. at 934. The Boushel interests argue that the present stay is sufficiently analogous to Colorado River abstention, so that the stay here should be final as well. Because we reject the Boushel interests' initial premise that this case is analogous to a case involving Colorado River abstention, we cannot agree with their conclusion regarding finality.
 
 
 18
 As the Moses Cone case instructs, Colorado River abstention, which allows federal courts to dismiss or stay cases in deference to concurrent state court proceedings, is appropriate where the federal court faces the identical substantive issue presented in the state court. Moses Cone, 460 U.S. at 10, 103 S.Ct. at 934. In such a case, "a stay of the federal suit pending resolution of the state suit mean[s] that there would be no further litigation in the federal forum; the state court's judgment on the issue would be res judicata." Id.
 
 
 19
 This is not the situation in the present case. As both parties acknowledge, the federal suit filed by the Boushel interests arises out of the same operative facts. However, the United States suit presents claims specifically naming Pollick and Himan as defendants, whereas the Quebec action does not. The issues therefore are not identical in the foreign and federal forums.
 
 
 20
 Furthermore, in the present situation, the Quebec action may well dispose of the Boushel interests' claims against Himan and Pollick, but it also may not. While the two concurrent suits involve many of the same issues, resolution of the Quebec action will not necessarily foreclose additional proceedings in the United States action. It is true that the Quebec action may have some preclusive res judicata effect in the federal suit. China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir.1987); Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 926-27 (D.C.Cir.1984). It is not clear, however, that the Canadian judgment will bar proceedings in the federal court against Himan and Pollick as individuals. If, as the district court suspected, the Boushel interests are able to recover from Toro in the Quebec action via respondeat superior for the wrongdoing of Himan and Pollick, then the Boushel interests will have no need to return to the federal forum. If, however, they are unable to recover for the acts of Himan and Pollick as individuals, the Boushels can return and pursue those claims in federal court. In this sense, the stay is not like a Colorado River stay because the district court did not face precisely the same issue in the concurrent proceeding and the res judicata effect is far less certain.
 
 
 21
 In granting the stay, the district court recognized that there was substantial overlap in the two cases, which is why it granted the stay in the interests of judicial economy and international comity.[2] However, the district court also recognized that the Quebec action might not conclusively resolve all the Boushel interests' claims against Himan and Pollick, which is why it specifically left the door open for further litigation in the federal court. Therefore, the order did not effectively throw the plaintiffs out of court. Cheyney State, 703 F.2d at 735. Rather, the stay issued was a temporary suspension. Id. It is irrelevant that the order is indefinite because the order ensures further proceedings in the federal court if necessary. Lunde, 898 F.2d at 1345.
 
 
 22
 Accordingly, we hold that the district court's order is not a final order because the substance of the order did not effectively end the federal litigation and it was not tantamount to a dismissal of the suit.
 
 
 23
 C. The District Court Order Does Not Meet the
 
 Collateral-Order Doctrine
 
 24
 The Boushel interests argue in the alternative that if the order is not a final order on its face, then it is still reviewable under the collateral-order doctrine. We reject this argument as well.
 
 
 25
 The Supreme Court has established a three-pronged test to determine whether an order that does not finally end the litigation is nonetheless appealable under § 1291. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988); Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). First, the order must conclusively determine the disputed question. Gulfstream, 485 U.S. at 276, 108 S.Ct. at 1136. Second, the order must resolve an important issue completely separate from the merits of the action. Id. Third, the order must be effectively unreviewable on appeal from a final judgment. Id. For an order to be appealable under the collateral-order doctrine, it must meet all three of those requirements. Id. We hold that the district court's order does not meet at least one of the prongs and therefore the collateral-order doctrine is not satisfied.
 
 
 26
 The district court's order does not conclusively determine the disputed question. The disputed question at this point is the pendency of the district court action. To be conclusive at this juncture, the order would have to either dismiss the case outright or allow the case to proceed concurrently with the Quebec action. The district court order did neither. As discussed earlier, the district court suspended the federal action in deference to the concurrent Canadian action with the understanding that the federal action could be continued if necessary. The district court did not necessarily "expect the order granting the stay to settle the matter for all time." Gulfstream, 485 U.S. at 277, 108 S.Ct. at 1137. The order was not necessarily the "final word" on the subject addressed. Moses Cone, 460 U.S. at 12 n. 14, 103 S.Ct. at 935 n. 14; Gulfstream, 485 U.S. at 277, 108 S.Ct. at 1137. Therefore, we hold that the district court's action was not conclusive.
 
 
 27
 We note finally that Toro has moved to strike certain portions from the record or, in the alternative, to supplement the record. Because we hold we are without jurisdiction to consider this case, we hereby deny the motion as moot. See Schlup v. Armontrout, 941 F.2d 631, 634 n. 2 (8th Cir.1991) (holding that motion to strike an affidavit not considered by appellate court because it was not part of record on review is moot).
 
 III.
 
 28
 Based on the foregoing, we conclude that the decision of the district court staying the United States action is not a final order subject to appellate review. This court is therefore without jurisdiction to consider this case, and the appeal is dismissed.
 
 
 
 *
 THE HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota
 
 
 [2]
 In its substantive decision to stay the United States action, the district court considered the similarity of the two actions, the degree of progress already made in the Quebec action, the adequacy and appropriateness of the Quebec forum, and notions of international comity and judicial efficiency. See, e.g., Caspian Invs., Ltd. v. Vicom Holdings, Ltd., 770 F.Supp. 880, 883-85 (S.D.N.Y.1991); DeYoung v. Beddome, 707 F.Supp. 132, 135-37 (S.D.N.Y.1989); Continental Time Corp. v. Swiss Credit Bank, 543 F.Supp. 408, 410 (S.D.N.Y.1982); Brinco Mining Ltd. v. Federal Ins. Co., 552 F.Supp. 1233, 1240-42 (D.D.C.1982). Were we to reach the merits of this case, we would conclude that the district court did not err or abuse its discretion in entering the stay