**EFCO CORP. f/k/a Economy Forms corporation, an Iowa corporation and Economy Forms, Ltd., Plaintiffs,**

v.

**ALUMA SYSTEMS, USA, INC., Aluma Systems Corp., A Subsidiary of Tridel Enterprises, Inc., et al., Defendants.**

No. CIV. 4–97–90069.

United States District Court, S.D. Iowa, Central Division.

Oct. 30, 1997.

David L. Charles, David K. Basler, Des Moines, IA, for Plaintiffs.

W. Don Brittin, Jr., Des Moines, IA, Harvey J. Kirsh, Toronto, Canada, for Defendnats.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR TO STAY

PRATT, District Judge.

### MEMORANDUM AND ORDER

Canadian defendants moved to dismiss for lack of personal jurisdiction in Iowa. In the alternative, defendants requested this court to stay proceedings in light of related proceedings in Canada. The court denies the motion to dismiss and grants defendants' requested stay.

### I. Background:

Plaintiff, EFCO Corp.,[1] is an Iowa corporation with its principal place of business in Iowa. Plaintiff, Economy Forms Ltd., is a limited company incorporated in Iowa and

1. Formerly known as Economy Forms Corp.

registered to do business in all the provinces of Canada. Economy Forms Ltd. is located in Georgetown, Ontario. Economy Forms Ltd. and Economy Forms Corp. are both subsidiary companies of William Holding Co., a limited company incorporated in Iowa. Plaintiffs will be referred to collectively as EFCO in this opinion.

The three defendants, Aluma Systems USA Inc. (Aluma USA), Aluma Systems Canada Inc. (Aluma Canada), and Aluma Systems Inc.(Aluma Systems)[2] will be referred to collectively as Aluma. Aluma USA is a California corporation with its principal place of business in California. Aluma Canada is a Canadian corporation and a wholly owned subsidiary of Aluma Systems and has its principal place of business in Canada. Aluma Systems is a Canadian corporation with its principal place of business in Toronto. Aluma Systems is a wholly owned subsidiary of Tridel Enterprises Inc. Tridel Enterprises is a Canadian corporation with its principal place of business in Canada.

EFCO claims, and Aluma does not contest, that EFCO and Aluma are two of the three "significant competitors in the world" for customized-construction-forms business. The forms are used in the construction industry to support and form concrete structures of all types—from tunnels to high-rise buildings. EFCO has offices dispersed over the Americas, as well as Europe and Southeast Asia. EFCO states that it has been in the business for approximately 60 years while Aluma began in 1971. According to EFCO, Aluma did not directly compete with EFCO in the customized forming business until approximately 1992. EFCO states that it developed a significant database of proprietary information that is compiled in the form of a manual and is only distributed to its engineering support personnel. The information is distributed in either hard-copy or software form.

The dispute between these parties arose when EFCO allegedly discovered that Aluma had obtained the EFCO database and used it to submit a bid for the construction of Ravens Stadium in Baltimore, Maryland. Aluma did not get the job. EFCO contends that its former employees gave the database to Aluma's Canadian branch after the former EFCO Canadian branch employees left to work for Aluma Canada. EFCO claims the Canadian branch of Aluma, Aluma Canada, helped prepare the bid on Ravens Stadium.

EFCO brought this action seeking relief under four counts: (1) violation of the Iowa Uniform Trade Secrets Act; (2) inducement of breach of fiduciary obligation; (3) conversion; and (4) unjust enrichment. Prior to filing this action, EFCO filed a separate action in Canada. The Canadian action will be discussed later in this opinion.

Aluma filed its Motion to Dismiss or to Stay on June 9, 1997. Dismissal was requested for lack of personal jurisdiction. Aluma stated:

> None of the defendants are incorporated or authorized to do business in Iowa. None of the defendants has done business or ever submitted a bid to do business in Iowa. None of the defendants have had any contact with the state of Iowa, nor have they availed themselves of the benefits of the forum. Defendants have no reason to expect to be haled before an Iowa court.

EFCO responded, alleging several jurisdictional facts. EFCO alleged, on the basis of very limited and preliminary discovery, that it knew of two construction projects in Iowa that used Aluma products in 1996 and 1997. (Pl.'s Sup. Br. at 4.) Further discovery revealed that Aluma had paid Iowa tax in 1992 and 1995 commensurate with Iowa sales or leases worth $44,000. (Pl.'s Sup. Br. at 4.) Aluma replied that, at least since 1990, it has not sold any product directly to a customer in Iowa. (Def.'s Sup. to Reply Br. at 4.) Aluma contends that it sold only to its independent, non-Iowa dealers which then resold or leased to Iowa customers. These dealers then remitted Iowa sales tax to Aluma USA which then paid the tax to the State of Iowa.

Aluma contends that only Aluma USA ever did business in the U.S. EFCO insists that Aluma defendants work in conjunction on any project or sale in the U.S. or elsewhere

---

**2.** Now known as Aluma Enterprises, Inc.

and that there is no clear territorial line between the activities of Aluma USA and Aluma Canada. For example and as previously stated, EFCO claims there is evidence Aluma Canada prepared the bid for Ravens Stadium in Baltimore.

EFCO also alleges that it is "well-aware of Aluma's 'competitive' practices" which include "(1) management obtaining copies of EFCO's publication "Form Marks," which clearly indicate that EFCO's home office is Des Moines, Iowa and that EFCO has a mailing address of Des Moines, Iowa; (2) management reading industry publications, such as "Engineering News Record," which periodically includes articles about EFCO and its Iowa base; and (3) management advising its sales personnel with information about EFCO, including EFCO's standing as a primary competitor and EFCO's primary place of business being in Iowa." EFCO states "this is an industry in which there are few players, such that all of the players know their competitors very well."

## II. Discussion:

### A. Personal Jurisdiction:

■ Aluma moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss EFCO's complaint for lack of personal jurisdiction. EFCO bears the ultimate burden of proving personal jurisdiction over the Aluma defendants. *Watlow Elec. Mfg. v. Patch Rubber Co.,* 838 F.2d 999, 1000 (8th Cir. 1988). Jurisdiction, however, need not be proved by a preponderance of the evidence until trial or until an evidentiary hearing is held. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party *need only make a prima facie showing* of jurisdiction." *Id.* (emphasis added).

■ This court has not held a full-blown evidentiary hearing and instead relies on the pleadings and affidavits from the parties. In weighing this material, the court views the facts in the light most favorable to the nonmoving party (EFCO) and resolves all factual conflicts or disputes in favor of that party. Id.

■ The court ordinarily analyzes personal jurisdiction on two levels, first examining the propriety of jurisdiction under the state's long-arm statute. *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 225 (8th Cir.1987). If the activities of the non-resident defendant pass the first level analysis, then the court considers whether the exercise of personal jurisdiction complies with the requirements of constitutional due process. *Dakota Indus.,* 946 F.2d at 1388. However, because personal jurisdiction in Iowa is coterminous with the constitutional reach of due process, the two level inquiry collapses into one. *Hicklin Eng'g Inc., v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir.1992)(per curiam).

Due process mandates that jurisdiction be exercised only if defendant has sufficient "minimum contacts" with the forum state, such that summoning the defendant to the forum state would not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). To maintain personal jurisdiction, defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Jurisdiction is proper, therefore, where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum State. *Id.* The Supreme Court, in applying these constitutional principles, long ago rejected strained "conceptualistic theories" and "mechanical tests" in favor of more realistic measures of the defendant's expectations. *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185; Cf., *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987). Even seemingly isolated acts are to be viewed in the context of the "circumstances of their

commission." *Id.* at 476 n. 18, 105 S.Ct. at 2184 n. 18.

In conjunction with these basic principles of due process, the Eighth Circuit applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents: and (5) the convenience of the parties. *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1432 (8th Cir.1995); *Trans Western Polymers,* 53 F.3d at 922; *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1215 (8th Cir.1977). *The first three factors are of primary importance, and the last two are "secondary factors." Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.,* 89 F.3d 519, 523 (8th Cir.1996); *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co.,* 63 F.3d 694, 697 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996); *Northrup King,* 51 F.3d at 1388.

The third factor (the relationship of the cause of action to the contacts) distinguishes whether jurisdiction is specific or general. *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1432 n. 4 (8th Cir.1995); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir.1994). Following the Supreme Court's lead in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404, the Eighth Circuit has elaborated on the third factor:

> Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.

*Bell Paper,* 22 F.3d at 819 (citations omitted).

■ EFCO asserts that this court has both specific and general jurisdiction, but clearly emphasizes specific jurisdiction. The emphasis is appropriate because, even in the light most favorable to EFCO, the pleadings and affidavits fail to set out a prima facie case of general jurisdiction. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *see, e.g., Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2nd Cir. 1996); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 481 n. 3 (3d Cir.1993); *Donatelli v. National Hockey League,* 893 F.2d 459, 462–63 (1st Cir.1990); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987). Usually courts look for some very large volume of business and a direct permanent physical relationship to the forum. *See Conti v. Pneumatic Products Corp.,* 977 F.2d 978, 981 (6th Cir.1992); *Noonan v. Colour Library Books, Ltd.,* 947 F.Supp. 564, 571 (D.Mass.1996). Two sales to non-Iowa distributors where Aluma's products eventually ended up in Iowa certainly constitute an insufficient basis for general jurisdiction.[3]

■ Turning to specific jurisdiction, the issue is more complicated.[4] Specific jurisdiction is usually defined as follows: "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Bell Paper,* 22 F.3d at 819. EFCO alleges jurisdiction on the basis of the "effects test" first

---

3. Aluma states that the alleged sales would amount to .007% of Aluma's 1996 consolidated revenue. (Def.'s Reply Br. at 3 n. 2.)

4. There is one point, however, that can be made rather quickly. As Aluma correctly points out, there is no allegation that any cause of action arose out of Aluma's products being physically present in Iowa or having been sold or leased to an Iowa business. Specific jurisdiction, therefore, cannot rest on these facts *alone.* Specific jurisdiction, by definition, "refers to jurisdiction over causes of action *arising from or related to* a defendant's actions within the forum state." *Bell Paper,* 22 F.3d at 819.

accepted by the Supreme Court in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Under the effects test doctrine, personal jurisdiction may be extended to cover out-of-state actors whose acts are intentionally directed to harm in-state plaintiffs. The acts need not occur within the forum state; the within-forum effects can be sufficient if certain conditions are met.

In *Calder,* the well-known entertainer Shirley Jones brought a libel suit against a tabloid news magazine, the magazine's California distributor, the magazine's editor, and one of the magazine's reporters. *Calder,* 465 U.S. at 784–85, 104 S.Ct. at 1484–85. Jones brought suit in California, her home state. *Id.* Except for the California distributor, defendants were all citizens of Florida. *Id.* Only the editor and the reporter objected to personal jurisdiction in California. *Id.* at 785, 104 S.Ct. at 1485.

The editor and the reporter argued that they were not responsible for the circulation of the article in California. *Id.* at 789, 104 S.Ct. at 1487. They further argued that they had no "direct economic stake" in their employer's sales in a distant state and had no control over their "employer's marketing activity." *Id.* The article, the defendants argued, was not their "agent for service of process." *Id.* Addressing these arguments, the Court stated:

> [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article....
>
> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts must be assessed individually.

*Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1487 (citations omitted).

Two conditions must be met for the *Calder* effects test to apply. First, the defendant's act must be intentional and not merely negligent. *Dakota Indus.,* 946 F.2d at 1390. Second, the "focal point" of the act, i.e., where the "brunt" of the harm is intended, must be within the chosen forum. Id. The "brunt" of the harm need not actually occur in the forum. *Core–Vent Corp. v. Nobel Indus.,* 11 F.3d 1482, 1492–93 (9th Cir.1993)(Wallace, C.J., dissenting and joined on this point by Fernandez, J.)(citing *Keeton v. Hustler Magazine,* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984)).

These two conditions coincide relatively easily in cases, such as *Calder,* where the plaintiff is an individual. As long as the plaintiff can show an intentional act by the defendant, it is hard to imagine instances where the "focal point" of both the act and the injurious effect would not be in the plaintiff's home forum; individuals tend to live and work in the same state. Indeed, the singular location of Jones and her interests (e.g., her work and reputation) may have played a very significant part in the Court's opinion. At the outset of the opinion, the Court stated that although "*[t]he* plaintiff's *lack of 'contacts' will not defeat otherwise proper jurisdiction,* ... *they* may be so manifold as to permit jurisdiction when it would not exist in their absence." *Id.* at 788, 104 S.Ct. at 1486 (emphasis added).

Applying *Calder* to cases involving corporate plaintiffs or other non-corporeal entities can create difficult and intensely case-specific factual determinations. The intended forum or "focal point" regarding one international company's interactions with another international company is substantially more difficult than the classic instance of "effects" jurisdiction where, for example, a person standing in Illinois intentionally kills a person standing in Iowa by firing a shot that crosses over the Mississippi River into Iowa. Undaunted, our circuit and others have implicitly agreed that

*Calder* does apply to jurisdictional disputes between large corporations. *See, e.g., Core-Vent,* 11 F.3d at 1487; *General Electric Capital Corp. v. Grossman,* 991 F.2d 1376, 1388–89 (8th Cir.1993); *Hicklin,* 959 F.2d at 739; *Dakota Indus.,* 946 F.2d at 1390; *Blue Ridge Bank v. Veribanc, Inc.,* 755 F.2d 371 (4th Cir.1985).

In *Dakota Industries,* the Eighth Circuit held that a South Dakota plaintiff corporation made a prima facie showing of personal jurisdiction in South Dakota over a California corporation. *Dakota Indus.,* 946 F.2d at 1391. The case involved the allegedly intentional infringement of plaintiff's trademark. The Court of Appeals, relying on *Calder* and reversing the district court, held "[t]he fact some of the 'passing off' occurred in South Dakota, along with the fact that [the plaintiff's] principal place of business is in South Dakota, demonstrates that [defendant's] actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there . . . ." *Id.* Two rejected attempts to register the defendant's infringing trademark, the reception of a "cease and desist" letter from the plaintiff, and an admission by one of defendant's officials that he was "expecting" a call from the plaintiff convinced the Court of Appeals that the defendant's conduct was intentional. *Id.*

Less than a year after its decision in *Dakota Industries,* the Court of Appeals, in a per curiam decision, affirmed a district court's order dismissing a case for failure to satisfy the *Calder* effects test. *See Hicklin Eng'g,* 959 F.2d at 739. The plaintiff corporation's principal and only place of business was in Des Moines, Iowa. The defendant was a Michigan corporation with its principal place of business in Michigan. The plaintiff alleged intentional interference with prospective business advantage, interference with contractual relations, and libel. Plaintiff filed suit in Iowa. The claims arose out of several letters sent to some of plaintiff's customers.

After discussing *Calder,* but not *Dakota Industries,* the Court of Appeals stated the following:

Calder is inapposite to the present case. Assuming [plaintiff's] allege to be true,

[defendant] sent correspondence containing defamatory statements to several of [plaintiff s] customers and interfered with its business. None of the correspondence, however, was published in Iowa. Nor can we say that [defendant's] actions were targeted to have an effect in Iowa. When a business seeks to promote its products and solicit the customers of its competitors, it necessarily wishes to have customers believe that its products are superior and to place its competitor's products in a less favorable light. Although this promotion and solicitation may have an effect on a competitor, absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction.

*Hicklin Eng'g,* 959 F.2d at 739.

In the case now before this court, Aluma argues that EFCO's factual allegations do not:

[P]rovide a basis for concluding that Aluma knew at the time of the purported misappropriation that EFCO was an Iowa corporation or that its principal place of business was in Iowa, let alone that Aluma intended the effects of its actions to be "aimed" at Iowa. If Aluma's alleged actions were targeted at EFCO at all (which Aluma denies) it would be more logical to conclude they were aimed at EFCO's operations in Ontario. The effect in Iowa, if any, was incidental.

(Def. Reply Br. at 4–5.) Aluma points to *Hicklin Engineering and Dakota Industries* in support of this proposition.

Although the court finds *Dakota Industries and Hicklin Engineering* to be instructive, their primary lesson is that each case must be decided on its own unique factual background. *Hicklin Engineering* does imply that even where the plaintiff corporation is located only in the proposed forum, the mere allegation of intentional torts is not sufficient alone to demonstrate a prima facie case of jurisdiction under *Calder. Hicklin Eng'g,* 959 F.2d at 739. However, the factual background in *Hicklin Engineering* is set forth in meager portion. This is not uncommon for a per curiam decision, but it does leave certain potentially relevant questions

unanswered. For instance, how many competitors were in the market?; What were the market positions of the two parties?; What was the content of the correspondence—did it mention the plaintiff in particular or even at all? The answer to any of these questions could be determinative.

The *Hicklin Engineering* case could possibly be read to imply that some type of physical presence is necessary. This court, however, does not find such an interpretation persuasive. Although the Court of Appeals did note that none of the correspondence was "published" in the forum, this does not mean that the Court of Appeals thought written documents in such cases become necessary "agents for service of process" under *Calder*. The fact of where a letter or article is sent or published is, under *Hicklin Engineering and Calder*, evidence of the defendant's intentions: its awareness of the location for the effects of its actions.

The *Dakota Industries* case, while it noted that "some" of the "passing off" occurred in the forum, did not express the notion that those acts were necessary to its holding. *Dakota Indus.*, 946 F.2d at 1391. Indeed, it would be hard to justify the Dakota Industries conclusion that South Dakota was the "unique" aim or focal point for the defendant's actions unless the plaintiff's principal place of business was not just *a factor* but the *primary factor* in such determinations.

■ Based on the relative thoroughness of the *Dakota Industries* discussion and its similar intellectual property subject matter, this court finds *Dakota Industries* more closely analogous to the facts in this case than the *Hicklin Engineering* case. The court, furthermore, finds the facts presented by EFCO, seen in the light most favorable to the plaintiff, make out a prima facie case of specific personal jurisdiction as to all counts. EFCO and Aluma are two of three major competitors in the same market. They have been engaged in direct competition for several years. Former EFCO employees, who most certainly knew of the companies Iowa Center for operations, were the ones who allegedly delivered the information in question to Aluma when they went to work for Aluma.

Although, if what has been alleged is taken as true, Aluma certainly had its own interests in the front of its corporate mind when it misappropriated the information and used it to place bids, etc., it would be a stretch to assume that Aluma did not understand that all benefits obtained were at EFCO's expense. It would also be far from "logical" to assume Aluma's actions were aimed "uniquely" at EFCO's Canadian branch. The physical act of theft is certainly aimed at the place of the theft, but the reasonable expectation and understanding in the mind of the thief is that he takes something that belongs to someone else and that the *effect* of his theft will be where that someone is located. In this case, the thing belonged to EFCO and both the person who physically took the information and the company that used it knew who and where EFCO was. EFCO's headquarters and principal place of business, and therefore the Iowa forum, was clearly the focal point of the alleged misappropriation.

Finally, this court finds that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Aluma, in all of its manifestations, appears to do substantial business in the United States. Requiring it to defend this suit in Iowa is fair play and substantial justice.

### B. Stay:

In January of 1997, EFCO filed suit against Aluma in Canada. The complaint named as defendants Aluma Systems, Aluma Canada, and several individuals. The complaint did not name Aluma USA. The Canadian complaint states a variety of legal claims that substantially overlap with the claims asserted in the complaint before this court: copyright infringement, misappropriation of confidential information and trade secrets, trademark infringement, and breach of fiduciary duties. The complaint requested the full panoply of relief, including preliminary and permanent injunctions. Pursuant to settlement between the parties entered into be-

fore the Canadian court, the parties have agreed to take "no further steps" until an independent expert finishes his or her evaluation and inspection of certain material and information.

Aluma requests this court stay proceedings in light of the ongoing Canadian litigation. A court has inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction. *See Boushel v. Toro Co.,* 985 F.2d 406, 409–10 (8th Cir.1993); *In re Houbigant,* 914 F.Supp. 997, 1003 (S.D.N.Y.1996); *Continental Time Corp. v. Swiss Credit Bank,* 543 F.Supp. 408, 410 (S.D.N.Y.1982) (citing *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). Among the relevant factors in determining whether to grant such a stay or dismissal include: the similarity of parties and issues involved in the foreign litigation; the promotion of judicial efficiency; adequacy of relief available in the alternative forum; issues of fairness to and convenience of the parties, counsel and witnesses; the possibility of prejudice to any of the parties; and the temporal sequence of the filing of the actions. *See Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880, 884 (S.D.N.Y.1991); *Continental,* 543 F.Supp. at 410. Federal courts are reluctant to decline jurisdiction solely on the basis of concurrent proceedings in another jurisdiction. "Parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously." *China Trade and Development v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987) (quoting *Laker Airways Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984)) (internal quotation marks omitted). *See also Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976) (federal court will abstain from exercising jurisdiction because of pending state court action only in "exceptional" circumstances);[5] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14–16,

19, 103 S.Ct. 927, 936–37, 938–39, 74 L.Ed.2d 765 (1983) (same). This obligation, however, is not absolute. *Caspian,* 770 F.Supp. at 884. In determining whether to dismiss or stay an action in favor of parallel litigation in state courts or other federal courts, a federal court should consider "wise judicial administration, ... conservation of judicial resources, and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Here, principles of international comity, which counsel deference to the legislative, executive and judicial actions of foreign nations, also support a stay in favor of the Canadian proceeding. *Caspian,* 770 F.Supp. at 883–84 (quoting *Cunard S.S. Co. v. Salen Reefer Serv. AB,* 773 F.2d 452, 456 (2d Cir. 1985)).

Maintaining two concurrent and simultaneous proceedings would consume a great amount of judicial, administrative, and party resources for only speculative gain. Furthermore, simultaneous adjudications regarding identical facts and highly similar legal issues creates the risk of inconsistent judgments. The plaintiff voices two primary concerns: (1) that Canadian procedural and substantive law would not afford adequate protection of its rights, and (2) that the parties are not exactly the same. Without some concrete examples or arguments for why Canadian law would not provide effective protection, this court is unpersuaded. Canada shares the same common law roots as our jurisprudence. *Clarkson Co. Ltd. v. Shaheen,* 544 F.2d 624, 630 (2d Cir.1976). "Certainly, if this court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence." *Brinco Min. Ltd. v. Federal Ins. Co.,* 552 F.Supp. 1233, 1240 (D.D.C.1982)(quoting *Fleeger v. Clarkson Co., Ltd.,* 86 F.R.D. 388, 392–93 (N.D.Texas 1980)).

As to concerns about the named parties or any other concerns, the court notes that it is merely ordering a stay and is not dismissing the plaintiffs action. Any material prejudice

---

5. As a recent decision stated: "[w]hile *Colorado River* and its progeny may be instructive in the present context, the considerations involved in deferring to state court proceedings are different from those involved in deferring to foreign pro-

ceedings, where concerns of international comity arise and issues of federalism and federal supremacy are not in play." *Evergreen Marine Corp. v. Welgrow Int'l Inc.,* 954 F.Supp. 101, 104 n.l (S.D.N.Y.1997).

that occurs to the plaintiff in the suit previously brought in Canada may be addressed by later proceedings before this court. *See Boushel,* 985 F.2d at 409–10.

The following is **HEREBY ORDERED:**

1. Defendants' Motion to Dismiss is **DENIED.**

2. This case is **STAYED** until further order of this court.

3. This Order is **CERTIFIED FOR INTERLOCUTORY APPEAL.**