PRINCIPAL FINANCIAL SERVICES, INC., an Iowa corporation, Plaintiff,

v.

BIG FINANCE AND INSURANCE SERVICES, INC., a Nevada corporation, Defendant.

No. 4:06–CV–00003.

United States District Court, S.D. Iowa, Central Division.

Sept. 11, 2006.

Richard B. Biagi, Kevin J. McDevitt, Susan Somers Neal, Neal & McDevitt LLC, Northfield, IL, Brian L. Campbell, Faegre & Benson, Des Moines, IA, for Plaintiff.

Daniel A. Rosenberg, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, for Defendant.

## ORDER

PRATT, Chief Judge.

Plaintiff, Principal Financial Services, Inc. ("Principal"), filed a Complaint (Clerk's No. 1) on January 4, 2006, alleging that Defendant, Big Finance and Insurance Services, Inc. ("Big Finance"), has engaged in trademark infringement and unfair competition by using Principal's logo. Principal is an Iowa corporation with its principal place of business in Des Moines, Iowa, and Big Finance is a Nevada corporation with its principal place of business in Laguna Nigel, California. The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1332, and 28 U.S.C. § 1338.

On February 20, 2006, Big Finance moved to dismiss the suit (Clerk's No. 10) on the basis that this Court lacks personal jurisdiction over Big Finance. Principal filed a Resistance (Clerk's No. 11) on March 9, 2006, and Big Finance filed a Reply (Clerk's No. 13) on March 17, 2006. On March 27, 2006, the Court issued an Order (Clerk's No. 16) granting Principal forty-five days to conduct jurisdictional discovery. The Court scheduled a hearing on the question of personal jurisdiction for July 14, 2006 (Clerk's No. 21). Principal filed a Supplemental Brief (Clerk's No. 22) on June 8, 2006 and Big Finance filed a Supplemental Brief (Clerk's No. 23) on June 22, 2006. On July 13, 2006, the parties informed the Court that they had agreed to rest on their respective briefs and attachments without a hearing. *See* Clerk's No. 24. On July 19, 2006, Principal filed a Motion for Leave to Conduct Additional Jurisdictional Discovery (Clerk's No. 25). Big Finance filed a Resistance (Clerk's No. 29) to that motion on August 7, 2006. Because it does not appear that additional jurisdictional discovery is necessary or appropriate, Principal's Motion to Conduct Additional Jurisdictional Discovery is denied. And, because this Court does not have personal jurisdiction over Big Finance, Big Finance's Motion to Dismiss is granted. Both motions are discussed in detail below.

## I. BACKGROUND

Principal is a multi-national corporation offering a variety of products and services in the fields of insurance, finance, investing, retirement, banking, healthcare, and real estate. Principal and its licensees and affiliates use a variety of trademarked triangular logos, which Principal refers to as the "Principal Family of Triangle Design Marks." Compl. ¶ 2. Big Finance is a technology and software development company that provides Internet-based software and technology support tools to the automotive industry. According to Principal, Big Finance began using a triangular logo that is virtually identical to the logo used by Principal and its affiliates. *Id.* ¶ 14. Principal alleges that Big Finance had actual or constructive knowledge of Principal's marks when it began using its logo. *See id.* ¶ 16. In addition, Principal contends, both Principal and Big Finance have typically used the triangle design in the color blue. *Id.* Principal's Complaint alleges the following three counts: (1) that Big Finance's use of the triangle design violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) that Big Finance's actions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) that Big Finance's use of the triangle design constitutes unfair competition in violation of Iowa common law. Principal seeks injunctive and monetary relief.

Principal's Complaint alleges that Big Finance "is doing business within the State of Iowa and within this District." Compl.

¶ 3. Principal alleges that Big Finance used a triangle design similar to Principal's triangle design in Iowa and in interstate commerce. *Id.* ¶ 14. Big Finance, in turn, contends that its contacts with Iowa are not sufficient to make it subject to personal jurisdiction in Iowa.

## II. PRINCIPAL'S MOTION TO CONDUCT ADDITIONAL JURISDICTIONAL DISCOVERY

■ In its Order dated March 27, 2006, the Court granted Principal's request for forty-five days to conduct jurisdictional discovery. *See* Order on Pl.'s Req. for Jurisdictional Disc. at 9. The forty-five day period has since expired. In its memorandum in support of its motion to conduct additional jurisdictional discovery, Principal states that it submitted interrogatories and requests for production to Big Finance, but that it has not taken the depositions that were authorized in the Court's original motion granting jurisdictional discovery. Big Finance asserts that it submitted its responses to Principal's interrogatories and requests for production in a timely fashion, and that the parties made arrangements for Principal to depose Sanford T. Sherman, Big Finance's Vice President–General Counsel, Chief Privacy Officer and Secretary, as well as Jack Oliver, Big Finance's regional sales manager. Def.'s Resistance at 2. Big Finance contends that Principal cancelled the depositions the week before their scheduled date. *Id.*

The following facts form the backdrop to Principal's request for additional jurisdictional discovery. Big Finance markets its web-based software under the name BIG-FNI. The software is intended for use by automobile dealers to manage the processes of credit application, financial institution submission, and approval of loans for prospective car purchasers. Sherman Decl. ¶ 3. According to Big Finance, it must establish relationships with lenders and automobile dealers in a given state before a dealer in that state can make use of the online software. *Id.* ¶ 3. According to a Declaration submitted by Sherman, no financial institutions in Iowa are qualified to use the BIGFNI software to process credit applications. *Id.* ¶ 9. Sherman also states that there are no automobile dealers in Iowa who are qualified to use the BIGFNI software. Sherman states that Big Finance has never received an application from a dealer in Iowa, and if it did, the application would be returned because Big Finance is not set up to do business in Iowa. *Id.* ¶ 16. Sherman asserts that Big Finance has had few, if any, contacts with Iowa:

> BIG is not registered to do business in the State of Iowa, has never entered into any contracts with any Iowa entities; never entered into a contract governed by Iowa law, never traveled to the State of Iowa for business purposes, has never recruited employees from/within the State of Iowa, has no offices in the State of Iowa, has no customers/clients in the State of Iowa, has never transacted business in the State of Iowa, has never owned or leased property in the State of Iowa, has never had any bank accounts in the State of Iowa, has never sued or been sued in the State of Iowa (except for the present matter), has no record of ever placing/receiving any phone calls to/from anyone in the State of Iowa (except to counsel in the present matter), has no record of ever sending or receiving correspondence to/from the State of Iowa (except with counsel and plaintiff in the present matter), and has no record of sending/receiving any emails to/from anyone in the State of Iowa (except to counsel in the present matter).

*Id.* ¶ 19.

Principal's request for additional jurisdictional discovery focuses on a business

relationship that Big Finance has established with Manheim, a network of commercial automobile dealers. Principal states that "a subsidiary of Manheim, i.e., Remarketing Solutions, Inc., may be the entity which is actually functioning as the marketing or contracting party with lenders and independent dealers for the sale of Big Finance's products and services." Pl.'s Mem. in Supp. of Add. Disc. at 3. Principal states that Remarketing Solutions ("RSI") has created a retail financing program, called Dealer Auto Funding Solutions (DAFS), for independent automobile dealers that is powered by technology from Big Finance. *Id.* at 4. Principal cites a Manheim press release stating that Manheim and Remarketing Solutions are "connecting independent dealers with major retail financing lenders using the DAFS platform." *Id.* The same press release states: "The first dealers to be eligible for the program are more than 10,000 independent dealers Manheim currently services with wholesale floorplan financing." *See* Clerk's No. 25–2. Principal states that this relationship "creates a reasonable assumption" that Big Finance's products and services, including its offending trademark, are being marketed to at least the 10,000 plus Manheim dealers. Pl.'s Mem. in Supp. of Add. Disc. at 4. Principal seeks permission to obtain discovery revealing the location of the Manheim dealers and the extent to which Manheim has marketed Big Finance's software in Iowa. Principal also contends that jurisdiction is supported by the facts that Remarketing Solutions is authorized to do business in Iowa and has an active Certificate of Standing in the state, and Manheim Automotive Financing Services, Inc., is also authorized to do business in Iowa with an identified registered agent.

Principal points to a Marketing Agreement between Big Finance and RSI, dated March 9, 2005. The Marketing Agreement provides that RSI will market Big Finance's system to RSI dealers and sign them up for its use, as well as promote Big Finance's system at participating RSI affiliate auction sites. The Agreement permits RSI to use third party sales agents or marketing representatives to fulfill its sales responsibilities. The Marketing Agreement specifies that RSI and Big Finance will jointly develop a sales plan that will be launched on a region-by-region basis. Finally, the Marketing Agreement grants RSI permission to use Big Finance's marks in order to market its products. *See* Pl.'s Ex. 5 at ¶¶ 2.2–2.3 (Clerk's No. 25–6).

Principal contends that Big Finance's arrangement with Manheim, through its subsidiary RSI, warrants an additional period for jurisdictional discovery. Principal asserts that Iowa contacts initiated by RSI, if they exist, would be sufficient to confer personal jurisdiction over Big Finance in this district. Principal cites three Eighth Circuit cases holding that participation in a contractual distribution plan might be sufficient to support a finding that a given defendant purposefully availed itself of a particular forum. *See Clune v. Alimak AB*, 233 F.3d 538, 543 (8th Cir. 2000) (stating that "when a seller heads a distribution network it realizes 'the much greater economic benefit of multiple sales in distant forums,' which in turn 'may satisfy the purposeful availment test.'") (citations omitted); *Vandelune v. 4B Elevator Components Unltd.*, 148 F.3d 943, 948 (8th Cir.1998) (concluding that a foreign manufacturer that placed its product into the stream of commerce in the United States with the knowledge that it would be distributed in the Midwest could be subject to personal jurisdiction in Iowa). *Cf. Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 615 & n. 7 (8th Cir. 1998) (concluding that personal jurisdiction was not appropriate and distinguishing *Vandelune* because the dispute involved a

commercial dispute, rather than a personal injury claim, and because the foreign manufacturer exercised no control over the product, the importer, or the distributor once the product was imported).

A second declaration submitted by Sherman indicates that, to date, the partnership with Manheim and RSI has not resulted in any Iowa dealers using Big Finance's software. Sherman states: "Big Finance has no relationship with any automobile dealers in the State of Iowa, and while Manheim may have dealers in the State of Iowa—Big Finance does not have directly or indirectly relationships with any Manheim dealers in the State of Iowa." 2nd Sherman Decl. ¶ 3 (Clerk's No. 29–2). Sherman continues: "To date, no Manheim dealers in the State of Iowa have access to Big Finance's software." *Id.* ¶ 4. Sherman further states that "Big Finance is in full and complete control of who uses its software program, conducts its own marketing efforts, and has full and complete access to all information and knowledge as to the extent of marketing, promotion, sales, use, and relationships with users of it[s] services and programs." *Id.* ¶ 8. And: "Big Finance is not doing business in the State of Iowa, on its own or through Manheim or any other third party." *Id.* ¶ 9. According to Sherman's statement, Big Finance has already provided Principal with a list of all of its customers and dealers, including applications it has received from states where Big Finance is not qualified to do business. *Id.* ¶ 10.

Principal seeks forty-five additional days to conduct jurisdictional discovery of the following information:

a. The location of the approximately 10,000 RSI/Manheim dealers;

b. All verbal, written or electronic communication between RSI and/or any third-party contractor and any Iowa dealer, lender or other person or entity regarding the DAFS Program;

c. All verbal, written or electronic communication between RSI and/or any third-party contractor with any dealer, lending institution or other person or entity regarding marketing the DAFS Program in Iowa;

d. Any verbal written or electronic communication between RSI and/or any third-party contractor with BFI regarding the scope, timing, extent of any roll out of the DAFS Program in Iowa.

Pl.'s Mem. in Supp. of Add. Disc. at 7.

In response, Big Finance states that it has already provided Principal with "a complete list of its lenders, dealers, and customers, which includes any and all Manheim dealers that are also customers of Big Finance." Def.'s Resistance at 5. With regards to the second and third requests, Big Finance states that it has already provided all of the relevant information to Principal. In addition, Big Finance states: "Big Finance is the only entity marketing Big Finance's software program. To the extent that Manheim had discussions about the DAFS program in Iowa, and Big Finance is not aware of it, the discussions could not possib[ly] bear on Big Finance's contacts with the State of Iowa." *Id.* at 6. Finally, Big Finance asserts that it has already responded to discovery requests about its relationship with Manheim and RSI, as well as to questions about its plans to provide services in Iowa, either directly or indirectly.

The discovery record does not indicate whether Big Finance's partnership with RSI and Manheim has resulted in marketing efforts in Iowa, but without advertising specifically aimed at Iowa, it is doubtful that a third party's marketing efforts alone could subject Big Finance to jurisdiction in Iowa. In *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* the Supreme Court examined whether a Japanese com-

pany could be subject to jurisdiction in California after it placed its products in the stream of commerce with the knowledge that some of the products would likely be sold in California. 480 U.S. 102, 105–06, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In a plurality opinion, Justice O'Connor concluded that merely placing a product in the stream of commerce is not enough to subject a company to personal jurisdiction, and discussed how advertising and other activities, together with placing a product in the stream of commerce, might subject a company to personal jurisdiction:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* Because this opinion did not command a majority of the Court, the Eighth Circuit has held that, in some situations, placing a product into the stream of commerce is sufficient to confer personal jurisdiction. *See, e.g. Clune,* 233 F.3d at 543; *Vandelune,* 148 F.3d at 948; *Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 615 (8th Cir.1994) (concluding that a foreign fireworks manufacturer could be subject to jurisdiction in Nebraska where it sold the product to a regional distributor in South Dakota for distribu-

tion, and the distributor had a regional salesperson located in Nebraska). These cases are all personal injury cases, and each case involved a situation where the manufacturer's product entered the forum state and caused an injury in that state. *See Clune,* 233 F.3d at 545 n. 9 (noting the difference between commercial disputes and personal injury claims); *see also Vandelune,* 148 F.3d at 945; *Barone,* 25 F.3d at 610–11. The current case does not involve a personal injury. Moreover, there is nothing to suggest that the partnership with Manheim and RSI is specifically intended to facilitate the sale of Big Finance's product in Iowa, or in the Midwest. In this respect this case differs from the case in Vandelune, where the manufacturer designed a sensor to be used in grain elevators and sold the product through a distributor located eighty miles from the Iowa border. *Vandelune,* 148 F.3d at 948. The Vandelune court concluded that the manufacturer could be subject to jurisdiction in Iowa because the product was purposefully marketed toward Iowa and the surrounding region. *See id.; see also Barone,* 25 F.3d at 615; *but see Clune,* 233 F.3d at 544 (concluding that a national distribution system alone might be sufficient to confer jurisdiction). In this case, the aim of the partnership between Big Finance and Manheim is a nationwide marketing program, and there is nothing about Big Finance's product that is uniquely suitable to the Midwestern market. *See Doris Elaine Chaffee Park v. Bandwagon, Inc.,* No. C98–0106, 1999 WL 33655722, at *4 (N.D.Iowa May 6, 1999). Any potential marketing or sales in Iowa is likely to be incidental to the nationwide sales effort. Furthermore, there is not a parent/subsidiary relationship between Big Finance and Manheim, and Sherman specifically stated that he is not aware of any contacts between Manheim and Iowa. *See Clune,* 233 F.3d at 545 n. 9 (noting that there was intermingling between the de-

fendant/parent corporation and its subsidiary, which suggested that the parent was aware of its subsidiary's activities in the forum state).

More importantly, Big Finance presented a sworn statement indicating that its product is not in use in Iowa. Regardless of whether the Eighth Circuit has endorsed the "stream of commerce plus" theory articulated by the plurality in *Asahi*, Big Finance's product has not made it to Iowa, never mind the "plus" part of the equation. Even if Big Finance's efforts to establish a nationwide marketing program through Manheim and RSI had resulted in Iowa sales, that would not necessarily be enough to subject Big Finance to personal jurisdiction in Iowa for the reasons discussed above. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1075 (8th Cir. 2004) (noting that the mere fact that the defendant's products were found in a given state was not enough to establish personal jurisdiction in that state where the defendant merely placed its products in the stream of commerce and did not target that particular region). The affidavits submitted by Big Finance indicate that any contacts between Manheim or RSI and Iowa regarding Big Finance's products, if there were such contacts, did not result in any sales. The alleged contacts with Iowa are too uncertain and attenuated to result in the exercise of jurisdiction,

and, in light of the sworn documents provided by Big Finance indicating that no Iowa dealers use its product, additional jurisdictional discovery at this point in the proceedings would be unlikely to bring to light any facts that would warrant the exercise of jurisdiction.

Having considered the arguments of both parties, the Court concludes that additional jurisdictional discovery is neither warranted nor appropriate at this time. Principal has already had ample time to conduct jurisdictional discovery, and Principal cancelled the depositions that the parties scheduled. Moreover, Principal has in its possession sworn statements explaining that Big Finance does not have any relationships with Iowa dealers, and no Manheim dealers in the state of Iowa have access to Big Finance's software. Principal also has a sworn statement indicating that Big Finance controls all of its marketing and is not doing business in Iowa, on its own or through any third parties. While it is true that the Court must construe all disputed facts in Principal's favor on this motion to dismiss, Principal has not presented the Court with any affidavits or exhibits that warrant disbelief of these sworn statements.[1] It is Principal's burden to establish a substantial connection between Big Finance and Iowa, though Principal need only make out a prima facie case.[2] *See Johnson v. Wood-*

---

[1] In its brief, Principal states that "there is actually reason to doubt the veracity and accuracy of BIGFNI's statements." Principal asserts that Big Finance has dealers (through RSI) in North Dakota, South Dakota, Vermont, and Wyoming, states where, according to the Big Finance website, Big Finance has no lenders. Principal contends that the relationships in these states call into question the veracity of Sherman's sworn statement that Big Finance could not accept an application from an Iowa dealer because Big Finance currently does not have any lenders in Iowa. Pl.'s Mem. in Sup. of Add. Discovery at n. 1. Big Finance counters that these four states

are states from which Big Finance received dealer applications, even though Big Finance does not do business in those states. Big Finance states that the applications had not yet been purged from the Big Finance system when Big Finance responded to Principal's discovery requests. *See* Def.'s Resistance to Add. Discovery at 8; *see also* 2nd Sherman Decl. ¶ 10.

[2] Arguably, Principal may bear the burden of proving personal jurisdiction by a preponderance of the evidence. Once a hearing is held, the party seeking to prove personal jurisdiction must do so by a preponderance of the

*cock,* 444 F.3d 953, 956 (8th Cir.2006) (noting that in a motion to dismiss for lack of personal jurisdiction, the burden is on the nonmoving party to establish that a substantial connection exists between the defendant and the forum state); *see also Dever,* 380 F.3d at 1073–74 & n. 1 (noting that once jurisdiction has been challenged, the plaintiff bears the burden of proving jurisdiction by affidavits and exhibits, and affirming the district court's decision not to grant jurisdictional discovery); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402–03 (4th Cir. 2003) (holding that the district court acted within its discretion when it denied jurisdictional discovery where there was no concrete proffer by the plaintiff and there was no indication of fraud or intentional misconduct by the defendant in its jurisdiction affidavits). Accordingly, Principal's Motion to Conduct Additional Jurisdictional Discovery is denied.

### III. STANDARDS FOR MOTION TO DISMISS

When ruling on a motion to dismiss, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir.2005). The Court applies a stringent standard to a Rule 12(b)(6) motion to dismiss, and "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 545–46 (8th Cir. 1997) (quoting *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982) (citation omitted) (emphasis added)). As noted above,

the Court draws all inferences in favor of Principal as the nonmoving party, but Principal carries the burden of proof as the party seeking to establish in personam jurisdiction. *See Romak USA, Inc. v. Rich,* 384 F.3d 979, 983 (8th Cir.2004).

### IV. BIG FINANCE'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Big Finance contends that jurisdiction in this Court is improper because Big Finance has few, if any, contacts with Iowa. Principal, on the other hand, argues that Big Finance's contacts with Iowa are sufficient to establish personal jurisdiction. In support of its assertion that personal jurisdiction is proper, Principal contends that Big Finance maintains a website where it solicits applications from automobile dealers throughout the United States who wish to purchase Big Finance's services. Principal also argues that Big Finance maintains contractual relationships with lenders that have a nationwide presence, including lenders with an Iowa presence. Principal further contends that Big Finance has a representative who is specifically assigned to transact business within the state of Iowa. Principal argues that Big Finance advertises in nationally-distributed trade publications and participates in national associations, conventions, and trade shows. Principal asserts that Big Finance's business plan involves an intention to launch the company's product in Iowa. Finally, Principal contends that the brunt of Big Finance's alleged trademark infringement will be felt in Iowa. The Court will examine these allegations below.

A federal court may assume jurisdiction over a nonresident defendant to the extent

---

evidence. See *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991). In this case, the parties waived the hearing after conducting jurisdictional discovery, even though a hearing on the mat-

ter was scheduled. Regardless, for the reasons discussed below, the Court concludes that Principal has failed to establish a prima facie case, let alone the higher burden of a preponderance of the evidence.

permitted by the forum state's long-arm statute and the Federal Constitution. *See Dever*, 380 F.3d at 1073. Iowa's long-arm statute confers jurisdiction to the full extent permitted by the Constitution. *Hicklin Eng'g., Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992); *see also* Iowa R. Civ. P. 1.306. For this reason, the Court's analysis will focus on the Defendant's constitutional right to due process.[3]

Due process "requires 'minimum contacts' between the non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Supreme Court has set forth two theories for establishing personal jurisdiction over non-resident defendants: (1) general jurisdiction, for cases in which a nonresident defendant has had "continuous and systematic" contacts with the forum state, even if the injuries in the particular case did not arise from those contacts; and (2) specific jurisdiction, for cases in which the injury giving rise to the lawsuit occurred in or had some connection with the forum state. *Dever*, 380 F.3d at 1073 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80

L.Ed.2d 404 (1984)). Under either theory, it is a prerequisite for jurisdiction that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Dever*, 380 F.3d at 1073. The exercise of personal jurisdiction is not proper unless the defendant has created a "substantial connection" with the forum state. *See Asahi*, 480 U.S. at 112, 107 S.Ct. 1026.

■ Once the Court decides that a party has purposefully established contacts with the forum state, the Court considers five factors to determine whether the exercise of personal jurisdiction would comport with fair play and substantial justice: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5)[the] convenience of the parties." *Dever*, 380 F.3d at 1073–74 (quoting *Burlington Indus.*, 97 F.3d at 1102). The Court is to give significant weight to the first three factors, which are considered to be "primary factors." *Id.; see also Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir.1995).

## A. The Nature and Quality of Big Finance's Contacts in Iowa [4]

■ The first factor that the Court must consider is the nature and quality of

---

3. The Eighth Circuit has observed that, in a federal question case, due process is examined in light of the Fifth Amendment rather than the Fourteenth Amendment. *See Dakota Indus.*, 946 F.2d at 1389 n. 2. The analysis is the same under either clause. *See id.* In any event, federal question jurisdiction and diversity jurisdiction are both present in this case.

4. Generally, the Court must consider whether the defendant has purposefully established contacts in the plaintiff's chosen forum as a threshold matter. *See Dever*, 380 F.3d at 1073. As will be discussed in more detail below, it does not appear that Big Finance has purposefully established any contacts in Iowa. Nonetheless, the Court will examine each of the five factors as they relate to the

Big Finance's contacts, if any, in Iowa. *See Dever*, 380 F.3d at 1073–74. Principal contends that Big Finance's website is sufficiently interactive to subject it to jurisdiction in Iowa. In *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir. 2003), the Eighth Circuit examined whether the defendant's website was sufficient to establish personal jurisdiction. The court examined the "sliding scale" test developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997), which courts have applied widely to determine whether a website allows users to do business, on one end of the spectrum, or is passive, on the other end. *Lakin*, 348 F.3d at 710. In *Lakin*, the Eighth Circuit concluded that the *Zippo* test is appropriate for cases involving specific jurisdiction, but that the test is only part of the analysis for cases involving claims of general jurisdiction. *Lakin*, 348 F.3d at 711. The *Zippo* court described the test as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with

the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997) (citations omitted).

Principal presents exhibits compiled from Big Finance's website, *www.bigfni. com*. Principal's exhibits and accompanying declaration show a map of the United States that allows Big Finance website users to click on the state of Iowa. When a user clicks on the Iowa icon, the website displays a message that states: "Check Back Often—Lenders Coming Soon." Pl.'s Exs. A, B. The website also contains a link to a "Dealer Sign–Up Form" that dealers fill out electronically and submit through the website. Principal contends that there is nothing on the website indicating that dealers from Iowa cannot sign up. A drop-down menu on the Dealer Sign–Up Form allows users to choose Iowa. Pl.'s Ex. D.

Big Finance contends that this Court's decision in *Med–Tec Iowa, Inc. v. Computerized Imaging Reference Sys., Inc.*, 223 F.Supp.2d 1034 (S.D.Iowa 2002) indicates that Big Finance's Internet site is insufficient to establish personal jurisdiction in Iowa. In *Med–Tec*, this Court determined that the defendant's website, which the Court termed "passive," was not sufficient to establish personal jurisdiction. *Med–Tec*, 223 F.Supp.2d at 1038. Here, Big Finance's website is interactive, as automobile dealers may sign up or use the software via the website. However, Sherman indicated in his Declaration that signing up on the website does not automatically make a dealer a customer of Big

---

contacts alleged by Principal in order to give Principal's arguments thorough consideration.

Finance: "Submission of dealer application information is not sufficient to enable a dealer to do business with BIG. As explained, the dealer would have to qualify as described above and all aspects of the conditions of doing business in a jurisdiction would have to be met." Sherman Decl. ¶ 15. Sherman continued: "BIG would not be able to do business with an Iowa dealership regardless of whether the dealer submitted an application or not. BIG has never received an application to do business from a dealer in Iowa either through its website or otherwise. If BIG did receive such an application it would be returned, as BIG is incapable of doing business in the State of Iowa." *Id.* ¶ 16. It would be a stretch to conclude that Big Finance's website, which is national in scope, reflects an effort on Big Finance's part to purposefully establish contacts in the state of Iowa. Even if the website met the threshold requirement of purposeful contacts, Big Finance has not received any Internet applications from Iowa, and the record reflects that an application from an Iowa dealer would be rejected, making the nature and quality of the contacts slim.

■ Principal next argues that Big Finance maintains relationships with some lenders who do business on a national or regional basis, including business in Iowa, making it probable that Big Finance is seeking to establish dealer relationships in Iowa. While it may be true that Big Finance has relationships with national lenders, this fact alone is not enough to subject Big Finance to jurisdiction in this state. Principal states that "it seems rather dubious to conclude that Defendant has not once broached the subject of expanding services into Iowa through its relationship with Bank of America, let alone any of the relationships it has with other nationwide lending institutions that also operate in Iowa." Pl.'s Res. to Def.'s Mot. to Dismiss at 8. Dubious or not, the Court cannot subject Big Finance to personal jurisdiction based on speculation, nor on actions that Big Finance has merely *thought* about taking. *See Dever,* 380 F.3d at 1073–74 & n. 1 (8th Cir.2004) (noting that conclusory allegations are not sufficient to establish minimum contacts); *see also Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 ("Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.") (emphasis in original).

■ Principal next asserts that Big Finance has a representative, Jack Oliver, who is the Central Regional Manager for Big Finance. According to Principal, Oliver is responsible for conducting business in Illinois, Indiana, Iowa, Minnesota, Michigan, Ohio, and Wisconsin. Oliver submitted a Declaration in which he acknowledged that he is the regional sales manager for the region that includes Iowa, but stated that he has no knowledge of contacts between Big Finance and Iowa: "In my capacity as regional sales manager, I have no knowledge of any contacts with the State of Iowa. The State of Iowa is part of my assigned territory, however, the territory is and has been undeveloped." Oliver Decl. ¶ 3. Thus, while it is true that Big Finance has a regional sales manager who covers Iowa, among other states, the affidavits and exhibits indicate, again, that Big Finance does not have any clients in Iowa and has not initiated sales in Iowa. There is nothing in the record to indicate that Oliver has established any contacts in the state of Iowa.

■ Principal's next contention is that Big Finance's advertising and trade memberships make it subject to jurisdiction in Iowa. Big Finance's responses to Principal's interrogatories indicate that Big Finance placed advertisements in the following print publications between January 2003 and August 2004: *Automotive News,*

*NADA Auto Exec, Wards Dealer Business, F & I Management & Technology, Digital Dealer, World of Special Finance,* and *NADA Show Daily's and Guide. See* Def.'s Resp. to Interrog. No. 5 (Clerk's No. 22–3). Big Finance has also placed advertisements in Autonews.com, an electronic publication. *Id.* Big Finance is a member of the National Automotive Finance Association, the Consumer Bankers Association, and the National Independent Automobile Dealers Association. *See* Def.'s Resp. to Interrog. No. 7. Big Finance has exhibited its product at various trade shows and conventions, none of which were held in Iowa. Big Finance acknowledges that it is possible that an Iowa dealer has contacted it at one of these events, but states that it has no knowledge of this happening:

> [I]t is possible that an Iowa automobile dealer may have contacted an employee or agent of the Defendant at a National Automobile Dealers Association (NADA) convention in which Defendant had a booth. Defendant is unaware of any such contacts, but does not have the ability to admit or deny the existence of any such contacts. However, no such convention was held in the state of Iowa and no business relationship was ever entered into with such an Iowa automobile dealership, nor does Defendant have any documents regarding such contact.

Def.'s Resp. to Interrog. No. 6.

In *Med–Tec,* this Court examined whether advertisements in trade publications could subject the defendant, a manufacturer of medical equipment, to personal jurisdiction. In addition to selling one piece of equipment in Iowa that was unrelated to the claim, the defendant had placed advertisements in trade publications. This Court concluded that "advertising in trade publications, and indeed other minimal solicitation, is not alone a sufficient basis for establishing personal jurisdiction." *Med–Tec,* 223 F.Supp.2d at 1037 (citing *Caribbean Broad. Sys. v. Cable & Wireless PLC,* 148 F.3d 1080, 1089–90 (D.C.Cir.1998); *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1301 (D.C.Cir. 1996); *Zumbro, Inc. v. Cal. Natural Prods.,* 861 F.Supp. 773, 779 (D.Minn. 1994); *Volkswagen De Mexico v. Germanischer Lloyd,* 768 F.Supp. 1023, 1028 (S.D.N.Y.1991)). The Court emphasized that the advertisements did not constitute the type of "continuous and systematic" contacts required to confer general jurisdiction, and noted that there were no facts to warrant a finding of specific jurisdiction. *See id.* at 1037. None of these advertisements, nor Big Finance's memberships in various national associations, were directed specifically at Iowa. They are insufficient to support a finding of personal jurisdiction in this case.

Principal also contends that Big Finance's national business plan included a plan to launch its product in Iowa by 2004. Big Finance admits that this was true, but Big Finance explained in its response to Principal's interrogatory that the business plan changed:

> Ramp-up schedule dated 9/30/03, includes an Iowa launch in August 2004 (Launch Priority 6). This plan was never implemented beyond Launch Priority 1, and Defendant only actively marketed to and signed up dealers from the states of Ohio, Michigan and Kentucky. The plan was abandoned in 2004 when the Company's efforts were redirected to independent dealers.
>
> *The California and National Rollout plan last updated 2/28/06* is Defendant's current plan, and is limited to 14 states and does not include Iowa.

Def.'s Resp. to Interrog. No. 3 (emphasis in original). Principal does not cite any case law to support its contention that an abandoned business plan is sufficient to support personal jurisdiction. Given that

Big Finance never executed the business plan, and there is nothing in the record to suggest that the business plan resulted in contacts with Iowa, the Court cannot conclude that the proposed Iowa launch warrants the exercise of jurisdiction in this case.

### B. The Quantity of Big Finance's Contacts with Iowa

■ The second factor for the Court to consider is the quantity of Big Finance's contacts with Iowa. *See Dever*, 380 F.3d at 1073–74. Because it does not appear that Big Finance has purposefully established any significant contacts in Iowa, the quantity of contacts is nominal at best. The Court notes, however, that even if it were to find that Big Finance's Internet site or its advertisements in national trade publications constituted an effort to purposefully establish contacts in Iowa, the quantity of those contacts would be small. The exhibits indicate that neither the website nor the advertising have resulted in any applications from Iowa dealers. Moreover, Big Finance placed advertisements in trade publications during four months in 2003 and three months in 2004. *See* Pl.'s Supp. Br. at 6. Although Principal characterizes this advertising as "extensive," the advertisements are not the sort of "continuous and systematic" contacts that confer general jurisdiction. *Med–Tec*, 223 F.Supp.2d at 1038. This is particularly true because the advertising was not targeted at an Iowa audience. *See id.* In sum, the quantity of Big Finance's contacts with Iowa, if there have been any, is small.

### C. Relation of the Cause of Action to the Contacts

■ The third factor to consider is the relation of the cause of action to the contacts. *See Dever*, 380 F.3d at 1074. This factor is relevant in cases where there is an assertion of specific jurisdiction. *See*

*generally Helicopteros Nacionales*, 466 U.S. at 414 & n. 9, 104 S.Ct. 1868. In this case, Principal asserts that the cause of action is related to the contacts for the following reasons: (1) Big Finance's allegedly infringing triangle design mark is used on its website and in its advertising materials, most of which enter the state of Iowa; (2) Big Finance intended to launch its business in Iowa in 2004; and (3) the injury to Principal will be felt most strongly in Iowa, where Principal is headquartered and where its triangle design mark is widely recognized.

For the reasons discussed above, neither Big Finance's website nor its abandoned business plan constitute efforts to establish purposeful contacts with Iowa in any meaningful way. Thus, these activities weigh against a finding that there is personal jurisdiction. Principal's third argument, that the injury to Principal will be felt most strongly in Iowa, is based on Principal's contention that "this case clearly involves 'intentional tort[ious] wrongdoing—namely, the use of [Principal's] trademark with knowledge of the infringement.'" Pl.'s Supp. Br. at 8 (quoting *Dakota Indus.*, 946 F.2d at 1391). Principal cites *Calder v. Jones*, a case in which the Supreme Court held that a California court could properly exercise jurisdiction over a Florida publication and its writers because the publication had printed a libelous article about the plaintiff, a California resident. The Court observed:

The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Calder v. Jones*, 465 U.S. 783, 788–89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In Dakota Industries, the Eighth Circuit construed the *Calder* "effects test" to mean that a company that knowingly and intentionally infringes on another company's trademark may be subject to jurisdiction in South Dakota, the state where the victim company was located. *See Dakota Indus.*, 946 F.2d at 1391. However, the court emphasized that the infringing company sold products in South Dakota, and there was evidence that the infringing company in fact shipped its products directly to South Dakota. *See id.* The court stressed that the traditional five-factor test still governs personal jurisdiction inquiries: "In relying on Calder, we do not abandon the five-part test ... [w]e simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged." *Id.*

The Eighth Circuit reaffirmed the relevance of the five-factor test in *Hicklin*, 959 F.2d at 739. In *Hicklin*, the plaintiff alleged intentional interference with prospective business relations, as well as libel. The district court dismissed the complaint for lack of personal jurisdiction, and the Eighth Circuit affirmed. The Circuit rejected the plaintiff's contention that the defendant, a Michigan corporation, could be subject to jurisdiction in Iowa, where the plaintiff corporation was located, just because the effects of the intentional tort were felt in Iowa. *See id.* at 739. Construing *Calder*, the Eighth Circuit noted: "it was more than mere effects that supported the [*Calder*] Court's holding." *Id.*

This Court examined *Calder, Dakota,* and *Hicklin* in a recent case that, like the current case, involved a claim for trademark infringement. *See AmerUs Group Co. v. Ameris Bancorp*, No. 4:06–cv–00110, 2006 WL 1452808, at *6 (S.D.Iowa May 22, 2006). The Court observed:

In attempting to reconcile *Calder* with *Dakota* and *Hicklin,* courts in this circuit have reached a general consensus that the effects of a tortious act can serve as a source of personal jurisdiction only where they: 1) are intentional; 2) are uniquely or expressly aimed at the chosen forum; and 3) caused harm, the brunt of which was suffered in the forum and which the defendant knew was likely to be suffered there.

*Id.* (citing *Pro Edge, L.P. v. Gue,* 374 F.Supp.2d 711, 729 (N.D.Iowa 2005); *Zumbro,* 861 F.Supp. at 783; *EFCO Corp. v. Aluma Sys., USA, Inc.,* 983 F.Supp. 816, 821 (S.D.Iowa 1997)). The Court noted that in both Calder and Dakota, the defendant had sold products in the plaintiff's selected forum. *Id.* That was not the case in *AmerUs,* and the Court concluded that the defendant in *AmerUs* could not be subject to personal jurisdiction in Iowa just because the plaintiff, an Iowa resident, alleged that it was the victim of an intentional tort committed by the defendant. *See id.* The Court explicitly held that, standing alone, the "effects" of a tortious act cannot subject a defendant to personal jurisdiction in a forum where no other contacts exist. *Id.*

The facts here are similar to the facts in *AmerUs* and in *Hicklin.* Although Principal has alleged an intentional tort, Principal has not established a prima facie case that Big Finance has minimum contacts in Iowa such that it should be subject to jurisdiction in Iowa. Big Finance does not have any "traditional" contacts in Iowa, such as an office, agents, representatives, employees, property holdings, or a business certificate. Moreover, none of the alleged contacts cited by Principal—that is, Big Finance's website, Midwestern sales representative, advertising in trade publications, association memberships, prior business plan, or relationship with Manheim—constitute a "substantial connec-

tion" in Iowa. *See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026. Given the complete absence of any substantial connection between Big Finance and the state of Iowa, the Court cannot exercise jurisdiction solely because the effects of the alleged injury may be most strongly felt in Iowa. *See Hicklin,* 959 F.2d at 739; *AmerUs,* 2006 WL 1452808, at *6.

D. *Interest of the Forum State*

The next factor that the Court must consider is the interest of the forum state in providing a forum for its residents. *Dever,* 380 F.3d at 1074. This consideration weighs in favor of Principal, as Iowa undoubtedly has an interest in providing a forum for aggrieved residents. *See Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir.1997) (assuming that Missouri has an interest in providing a forum for its residents); *see also AmerUs,* 2006 WL 1452808 at *9. However, this factor alone is not enough to warrant a finding that there is personal jurisdiction over Big Finance. *See generally Minn. Mining & Mfg.,* 63 F.3d at 697 (explaining that the last two factors are "secondary factors").

E. *The Convenience of the Parties*

The final factor for the Court's consideration is whether one forum is more convenient for the parties. *See Dever,* 380 F.3d at 1074. Principal contends that Iowa is the most convenient forum because "the tens of thousands of documents relating to Principal's rights in and to its famous edge design trademark and its use dating back to at least as early as 1985 are located in Des Moines, Iowa." Pl.'s Supp. Mem. at 9. Principal asserts that, in contrast, there are only a handful of potential witnesses and a limited number of documents on Big Finance's side of the dispute. *See id.* Big Finance disputes this assertion, indicating that it may need to present more documents and witnesses during the course of the lawsuit than it has produced during this dispute regarding jurisdiction. Def.'s

Supp. Mem. at 7. Even assuming that Principal is correct in its contention that it will produce the bulk of the discovery documents and witnesses in this case, the Court cannot conclude that it would be extremely inconvenient for the case to proceed in another forum. As Big Finance points out, Principal is an international company with offices across the country, and it presumably has the resources to litigate in another jurisdiction. Ultimately, this factor does not weigh in favor of either party, as each party would undoubtedly find its home forum more convenient than the opposing party's home forum. *See AmerUs,* 2006 WL 1452808, at *9. In sum, because Big Finance has not established any significant contacts in Iowa, the Court cannot exercise personal jurisdiction over Big Finance in this case.

## V. CONCLUSION

For the reasons discussed above, Principal's Motion for Leave to Conduct Additional Jurisdictional Discovery (Clerk's No. 25) is DENIED, and Big Finance's Motion to Dismiss for Lack of Jurisdiction (Clerk's No. 10) is GRANTED.

IT IS SO ORDERED.